**PENSION BENEFIT GUARANTY CORPORATION, Plaintiff,**

v.

**REPUBLIC TECHNOLOGIES INTERNATIONAL, LLC., et al., Defendants.**

**No. 5:02 CV 01116.**

United States District Court, N.D. Ohio, Eastern Division.

Oct. 11, 2002.

Lawrence J. Baer, Martin J. Bienenstock, Weil, Gotshal & Manges, LLP, New York City, Sean D. Malloy, Tyler L. Mathews, Shawn M. Riley, McDonald, Hopkins, Burke & Haber Co., Cleveland, OH, for defendants.

William G. Beyer, Susan E. Birenbaum, James J. Keightley, Heather N. Yanak, Pension Benefit Guaranty Corporation, Office of the General Counsel, Washington, DC, Ralph L. Landy, Washington, DC, for plaintiff.

## MEMORANDUM OPINION AND ORDER

ECONOMUS, District Judge.

This matter is before the Court upon the Motion of the Pension Benefit Guaranty Corporation for a Protective Order. (Dkt.# 42.)

**I.**

On June 14, 2002, the Plaintiff, Pension Benefit Guaranty Corporation ("PBGC"), filed its Complaint (Dkt.# 1) alleging claims pursuant to the Employee Retirement Income Security Act ("ERISA"), *as amended,* 29 U.S.C. sections 1301–1461 (2000), against the Defendant, Republic Technologies International, LLC ("RTI"), in RTI's capacity as a plan administrator of four benefit plans: (1) the Republic Technologies International, LLC—USWA Defined Benefit Plan ("RESI Plan"); (2) the Republic Technologies International, LLC Pension Plan for Union Eligible Employees at the Lorain Facility ("Union Plan"); (3) the Republic Technologies Inter-national, LLC Pension Plan for Salaried Employees of the Former USS/KOBE Steel Company ("Salaried Plan"); and (4) the Republic Technologies International, LLC Noncontributory Pension Plan for Hourly Paid Employees at Medina, Ohio ("B & L" Plan) (collectively referred to as the "Plans"). (Dkt.# 1, ¶ 1.) The Complaint requests specifically that the Court: (1) adjudicate that the Plans are terminated pursuant to 29 U.S.C. section 1342(c); (2) appoint the PBGC trustee of the Plans pursuant to 29 U.S.C. section 1342(c); (3) establish June 14, 2002 as the termination date of the Plans pursuant to 29 U.S.C. section 1348(a)(4); and (4) order all parties having property, assets, or records, relevant to this matter to turn over such materials to the PBGC. (Dkt.# 1, p. 12.)

On June 25, 2002, the USWA filed a motion to intervene for the purposes of challenging the terminations of the RESI Plan and the Union Plan. (Dkt. # 8; Dkt. # 10, Memorandum in Support of Motion of the United Steelworkers of America, AFL–CIO, CLC to Intervene ("Mem. In Support"), p.3.) In its motion, the USWA asserted that it maintained standing to challenge the terminations of the forgoing Plans pursuant to sections 4003(f)(1) and (2)(A) of ERISA. (Mem. In Support, p.3.) The Court granted the motion. (Dkt.# 20.)

The Court subsequently held a case management conference ("CMC") whereby the PBGC agreed to provide RTI and the USWA with the administrative record of the termination proceedings. (Dkt.# 25.) The PBGC filed the administrative record with the Court on September 3, 2002. (Dkt.## 29–39.)

On September 12, 2002, the Court held a status conference during which the parties discussed the propriety of conducting further discovery. (Dkt.# 41.) USWA argued in favor of additional discovery and propounded one (1) Interrogatory (the "Interrogatory"), as well as thirteen (13) Requests for Admissions (the "Requests") to the PBGC. (Dkt. # 43, pp. 3–4; Dkt. # 44, Exs. A & B.) The PBGC agreed to respond to the Requests numbered five (5) through seven (7). (Dkt. # 43, pp. 3–4; Dkt. # 44, Exs. A & B.) Accordingly, the PBGC authenticated its

2000 and 2001 annual reports and confirmed it stated surplus as of September 30, 2001. (Dkt. # 43, pp. 3–4; Dkt. # 44, Exs. A & B.) The PBGC objected to all other discovery and declared its intent to file the instant motion. Consequently, the Court established a briefing schedule for the resolution of the discovery dispute.

The instant motion ensued.

**II.**

The PBGC is a corporation wholly owned by the United States Government, modeled after the Federal Deposit Insurance Company. *See* 29 U.S.C. § 1302 (1994); *PBGC v. LTV Corp.*, 496 U.S. 633, 636–37, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990). The PBGC administers and enforces Title IV of ERISA. *See* 29 U.S.C. § 1302(a). The PBGC operates a mandatory government insurance program that protects the pension benefits of millions of American workers who participate in pensions covered by ERISA. *See LTV Corp.*, 496 U.S. at 637, 110 S.Ct. 2668.

One function of the PBGC is to terminate a pension fund because the fund has insufficient assets to satisfy its obligations to the retired employees. In this situation, the PBGC "becomes the trustee of the plan, taking over the plan's assets and liabilities." *Id.* The PBGC thereafter merges the remaining assets of the terminated plan with its own funds to "ensure payment of most of the remaining 'non-forfeitable' benefits."[1] *See* 29 U.S.C. §§ 1301(a)(8), 1322(a) & (b); *LTV Corp.*, 496 U.S. at 638, 110 S.Ct. 2668. The PBGC then pays benefits according to limits defined by the ERISA statutes. *See* 29 U.S.C. § 1322(b)(3)(B).

The PBGC has the authority to conduct both voluntary and involuntary terminations. *See* 29 U.S.C. §§ 1341–42. Voluntary terminations can take two forms. First, a "standard termination" occurs when the employer has sufficient assets to pay all the benefit commitments of a terminated plan. *See LTV Corp.*, 496 U.S. at 639, 110 S.Ct. 2668. The second form of voluntary termination occurs when the company does not have sufficient funds to pay its obligations to the employees. Under this latter form of termination, the employer must demonstrate financial distress to the PBGC. *See* 29 U.S.C. § 1341(c).

Involuntary termination proceedings often involve business entities that are experiencing severe financial difficulty. *See* 29 U.S.C. § 1342. The PBGC may involuntarily terminate a private pension fund if it determines that any of the following four factors are present:

> (1) the plan has not met the minimum funding standard required ... [by the statute], (2) the plan will be unable to pay benefits when due, (3) the reportable event described in section 1343(b)(7) of [ERISA] has occurred, or (4) the possible long-run loss of the corporation with respect to the plan may reasonably be expected to increase unreasonably if the plan is not terminated.

29 U.S.C. § 1342(a); *see also LTV Corp.*, 496 U.S. at 639, 110 S.Ct. 2668.

When the PBGC seeks involuntary termination, the Plan Administrator and the PBGC are authorized to issue a mutually acceptable date for plan termination. 29 U.S.C. § 1348(a)(2). If the parties are unable to reach an agreement, the resolution of an appropriate termination date becomes the prerogative of the court. 29 U.S.C. § 1348(a)(4).

It is the latter instance that brings the parties before the Court. The PBGC has determined that the Plans must be terminated effective June 14, 2002. The USWA seeks discovery relating to the propriety of the June 14, 2002 termination date from which the PBGC requests a protective order.

Rule 26 (b)(1) of the Federal Rules of Civil Procedure provides that:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party...Relevant information need not be admissible at the trial if discovery appears to be reasonably calculated to lead to the discovery of admissible evidence.

---

1. The ERISA statute defines a non-forfeitable benefit as "a benefit for which a participant has satisfied the conditions for entitlement under the plan or the requirements of this chapter." 29 U.S.C. § 1301(a)(8).

FED. R. CIV. P. 26(b) The scope of discovery is within the sound discretion of the trial court. *Chrysler Corp. v. Fedders Corp.,* 643 F.2d 1229, 1240 (6th Cir.1981). The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad. *See Mellon v. Cooper–Jarrett, Inc.,* 424 F.2d 499, 501 (6th Cir.1970).

Nevertheless a party may seek to obtain a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. Rule 26(c) provides that:

> Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matter relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . .

As an initial matter, the Court determines that the USWA's requests for discovery are tailored to the issue of June 14, 2002 termination date, rather than the PBGC's decision to terminate the Plans. (Dkt.# 47, pp. 3–4.) Indeed, as the PBGC's motion throughly examines, discovery relating to the PBGC's cause determination is limited to whether the PBGC acted in an "arbitrary and capricious" manner. (Dkt.# 43, pp.4–6.) *See also, Air Line Pilots Ass'n. v. Pension Benefit Guaranty Corp.,* 193 F.Supp.2d 209 (D.D.C.2002)(examining exhaustively authorities applying the "arbitrary and capricious" standard to termination proceedings). As the PBGC further demonstrates, the Court generally is limited to administrative record when applying the "arbitrary and capricious" standard in the absence of bad faith or improper behavior. (Dkt.# 43, pp. 4–6.) There lacks any allegation that the administrative record produced by the PBGC is insufficient to serve as a basis for the cause determination. (Dkt.# 47, pp. 2–3.) Consequently, the Court is precluded from allowing additional discovery regarding the PBGC's decision to terminate the Plans.

The PBGC's selection of the June 14, 2002 termination date presents a separate issue. As indicated, *supra,* section 1348(a)(4) of ERISA directs that the district court is to establish a termination date where, as in the instant case, the plan administrator and the PBGC are unable to agree on a termination date. The statute fails, however, to provide a standard to guide the Court in its selection. Notwithstanding this statutory deficiency, courts have applied routinely the standard established in *Pension Benefit Guaranty Corp. v. Heppenstall Co.,* 633 F.2d 293 (3rd Cir.1980), *as refined in, United Steelworkers of Am. v. Harris & Sons Steel Co.,* 706 F.2d 1289 (3rd Cir.1983). As stated in *Heppenstall,* the district court must consider the statutory functions of the PBGC which are:

> (1) to encourage the continuation and maintenance of voluntary private pension plans for the benefit of their participants,(2) to provide for the timely and uninterrupted payment of pension benefits to participants and beneficiaries under plans to which this subchapter applies; and (3) to maintain premiums established by the corporation under section 1306 of this title at the lowest level consistent with carrying out its obligations under this subchapter.

29 U.S.C. § 1302(a)(1),(2),(3). The goal of the district court therefore is "to find a date that balances the interests of the plan participants with protecting the fund from overpayment." *See Pension Comm. For Farmstead Foods Pension Plan for Albert Lea Hourly Employees v. Pension Benefit Guaranty Corp.,* 991 F.2d 1415, 1419 (8th Cir.1993)(internal citations omitted). *Accord Pension Benefit Guaranty Corp. v. Mize Company, Inc.,* 987 F.2d 1059, 1063 (establishing a "two step test: (1) select the earliest date on which participants had notice of the termination, and (2) 'then select whatever later date serves the interests of the PBGC' ")(internal citations omitted). The district court therefore must engage in a three-step approach to: (1) identify the interests of all plan participants and the PBGC; (2) establish parameters which maximize

those interests; and (3) set the termination date accordingly. *Id.* (quoting *Harris & Sons Steel Co.,* 706 F.2d 1289, 1296 (3rd Cir.1983)).

It is in light of the forgoing approach that the Court considers the USWA's request for discovery relating to the PBGC's proposed termination date. The USWA seeks specific discovery relating to: (1) the PBGC's estimates regarding potential losses resulting from the terminations of the RESI Plan and Union Plan (Requests ## 1–4); and (2) the PBGC's selection of termination dates in analogous "shut-down" circumstances. (Requests ## 8–13). (Dkt. # 43, p. 3; Dkt. # 47, p.2) The PBGC opposes discovery asserting that: (1) the Court must grant deference to its selected date; (2) the disclosure of its anticipated losses is irrelevant and is a matter of accounting; (3) information regarding the selection of termination dates in other situations in irrelevant as each decision must be made on a case-by case basis. (Dkt. # 43, pp. 6–12; Dkt. # 48, pp. 2–10.)

The Court is unpersuaded by the arguments advanced by the PBGC. First, the PBGC misplaces emphasis on authorities stating that the its decision to terminate and its selected date of termination are "inextricably linked." While it is patent that each decision may be "based on the same data, made through the same process, and embodied in the same documents" (Dkt.# 43, p. 6), the authorities indicate that each decision maintains a separate legal significance. For instance, as discussed, *supra,* judicial review of the PBGC's decision to terminate is subject to the "arbitrary and capricious" standard and the Court's analysis is limited to the administrative record. There exists, however, a dispute among the authorities as to the level of deference, if any, that the Court must afford to the PBGC's selected date. *See Pension Comm. For Farmstead Foods Pension Plan for Albert Lea Hourly Employees,* 991 F.2d at 1420 (examining prior authorities and determining that great deference should be afforded to PBGC's selected date); *In re Pan American World Airways, Inc. Cooperative Retirement Income Plan,* 777 F.Supp. 1179, 1183–84 (S.D.N.Y.1991)("All parties agree that, in the event of a dispute between the plan adminis-trator and PBGC, the date is to be set by the court without deference to the agency's determination that attends the decision on whether to terminate the plan"). The Court shall refrain making a determination regarding the level of deference until dispositive motions are filed, nevertheless, there lacks any authority holding that the district court must limit its review of the selected termination date to the administrative record. Consequently, the Court may allow additional discovery regarding the PBGC's selected termination date in accordance with Rule 26 of the Federal Rules of Civil Procedure.

■ The inquiry for the Court therefore is whether the USWA's discovery requests are relevant, or likely to lead to relevant, evidence relating to the proposed termination date. Requests numbered one (1) through (4) concern the accounting procedures of the PBGC when confronted with a possible termination of a pension plan. The PBGC asserts that such information is irrelevant and argues at great length as to the merits of its accounting procedures. The PBGC puts the cart before the horse. Such arguments concern the weight and sufficiency of the evidence, rather, than whether such information may be relevant to Court's determination of the selection date. It is likely that information regarding the financial standing of the PBGC may be relevant to the Court's inquiry into the selected termination date. Specifically, such information may be relevant to the Court's inquiry into any possible overpayment by the PBGC. As the Court finds that Request one (1) through four (4) meet the requirements of Rule 26(b), and the PBGC has failed to allege "any annoyance, embarrassment, oppression, or undue burden or expense", FED. R. CIV. P. 26(c), generated through responding to the Requests, the Court shall refrain from entering a protective order.

■ Similarly, the Court determines that the Requests eight (8) through thirteen (13) concerning the PBGC's selection of termination dates in analogous situations are relevant to Court's inquiry. While the Court concurs that the selection of termination date must be made on a case-by-case basis, infor-

mation regarding the PBGC's procedures in analogous scenarios may assist the Court in determining whether the PBGC engaged in any extraordinary procedures in reaching the June 14, 2002 terminate date. Indeed, "Congress determined that in the absence of agreement between PBGC and a plan administrator the court would protect participants from [PBGC's] overly cautious use of the involuntary termination feature". *Heppenstall,* 633 F.2d at 301. Information regarding the PBGC's practices in analogous scenarios is likely to assist the Court in ensuring that the PBGC's selection of termination date conformed with the PBGC's general custom and practice.

Accordingly, the Court hereby orders that the Motion of the Pension Benefit Guaranty Corporation for a Protective Order (Dkt.# 42) is **DENIED**. The PBGC shall provide the requested discovery to the USWA on or before October 21, 2002.

**IT IS SO ORDERED.**